DIEMER, Appellant,

v.

DIEMER, Appellee.

[Cite as *Diemer v. Diemer* (1994), 99 Ohio App.3d 54.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66420.

Decided Dec. 8, 1994.

*Gary B. Garson Co., L.P.A.,* and *Paul W. Flowers,* for appellant.

*Wegman, Hessler, Vanderburg & O'Toole, Keith A. Vanderburg* and *Jeffrey W. Krueger,* for appellee.

KRUPANSKY, Judge.

Plaintiff–appellant Karen A. Diemer ("Karen"), who is deceased, timely appeals via the executor of her estate, Thomas A. Kascak, from the October 7, 1993 and November 2, 1993 judgments of the Cuyahoga County Common Pleas Court, Domestic Relations Division. In these journal entries, the Domestic Relations Division granted the motion of defendant-appellee Donald J. Diemer ("Donald") to dismiss Karen's complaint for divorce due to Karen's death while the divorce proceedings were pending. At the same time, the Domestic Relations Division denied plaintiff's motion to substitute Kascak, upon suggestion of Karen's death, as a party to the divorce action.

On July 25, 1989, Karen and Donald jointly executed an antenuptial agreement which became effective on September 2, 1989 when the parties were married. Approximately three years later, on December 10, 1992, Donald filed a complaint for divorce but voluntarily dismissed his divorce complaint six months thereafter. Approximately two months after Donald dismissed his divorce complaint, Karen filed a complaint for divorce on July 26, 1993. Approximately three weeks thereafter, on August 12, 1993, however, Karen died before the divorce action could be heard. Donald then filed a suggestion of death and moved the domestic relations court, in light of Karen's death, to dismiss Karen's divorce action.

Kascak, the executor of Karen's estate and also Karen's father, subsequently filed a motion to substitute himself, as executor of Karen's estate, in place of Karen as party plaintiff in Karen's divorce action. In addition, Kascak filed a brief in opposition to Donald's motion to dismiss. In his brief, Kascak essentially argued that Karen's death did not divest the Domestic Relations Division of

jurisdiction to interpret and enforce the Diemers' antenuptial agreement. Donald then filed a reply brief arguing, *inter alia,* that a divorce action prior to being heard by the domestic relations court necessarily abates upon the death of one of the parties. Kascak filed a response essentially arguing that the Domestic Relations Division retained jurisdiction to enforce the parties' antenuptial agreement notwithstanding Karen's death.

On October 7, 1993, the Domestic Relations Division denied Kascak's motion to substitute himself as party plaintiff in the divorce action and granted Donald's motion to dismiss the divorce action. In its dismissal order, the domestic relations court stated that since Karen died before the divorce proceedings were heard, the domestic relations court lacked jurisdiction to enforce the antenuptial agreement. In addition, the domestic relations court stated in relevant part as follows:

"In reviewing the antenuptial agreement, the Court can find no language or clauses that would in any way give the executor and/or the estate of Karen Diemer any rights under the antenuptial agreement upon her death."

Thereafter, Kascak moved the domestic relations court to clarify its order or, in the alternative, vacate the order. Kascak stated in his motion, as executor of Karen's estate, Kascak intended to pursue in probate court the claims of Karen's estate with respect to the antenuptial agreement. Kascak, therefore, moved the domestic relations court to hold that the dismissal of the divorce action was not a determination upon the merits of the rights of the parties pursuant to the antenuptial agreement but was, rather, only a decision that the Domestic Relations Division lacked jurisdiction to enforce the antenuptial agreement.

On November 2, 1993, the domestic relations court journalized a *nunc pro tunc* order altering its order of October 7, 1993. In its November 2, 1993 order, the domestic relations court added language to the foregoing excerpt of its journal entry indicating, *inter alia,* that its determination of rights accruing to Karen's estate was limited to the context of the divorce proceedings. Specifically, the domestic relations court stated in relevant part as follows:

"In reviewing the antenuptial agreement, the Court can find no language or clauses that would in any way give the executor and/or the estate of Karen Diemer *in the divorce proceedings* any rights under the antenuptial agreement upon her death." (Emphasis added.)

Thereafter, Donald Diemer did not appeal from or otherwise contest the domestic relations court's *nunc pro tunc* entry. Kascak, however, as executor of Karen's estate, timely appealed both decisions of the domestic relations court with respect to the jurisdictional question.

■ However, before appellant's assignment of error is considered, appellee requests in a pending motion to dismiss the within appeal because Kascak, as executor of Karen's estate, is not the real party in interest and cannot, therefore, maintain the appeal *sub judice.*

Civ.R. 17 states in relevant part as follows:

"(A) **Real party in interest.** Every action shall be prosecuted in the name of the real party in interest. An *executor,* administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute *may sue in his name as such representative without joining with him the party for whose benefit the action is brought.*" (Emphasis added.)

In the case *sub judice,* the antenuptial agreement provides for the distribution of valuable real and personal property between Karen and Donald and, if one predeceased the other, among the decedent's heirs at law. Kascak is indisputably the executor of Karen's estate. As executor, Kascak represents the beneficiaries of Karen's estate, *i.e.,* the real parties in interest, who will be directly benefitted or injured by the outcome of the case *sub judice.* In accordance with Civ.R. 17, clearly Kascak in his representative capacity possesses standing to maintain the within appeal to determine whether the rulings of the Domestic Relations Division were proper.

Appellee argues, however, that since the domestic relations court denied Kascak's motion to substitute himself as a party plaintiff in the divorce action, the domestic relations court refused to make Kascak a real party in interest. Appellee's argument is flawed.

Civ.R. 25(A) states in relevant part as follows:

"(1) If a party dies *and the claim is not thereby extinguished,* the court shall, upon motion, order substitution of the proper parties." (Emphasis added.)

The Civ.R. 25 Staff Notes state in relevant part as follows:

"Rule 25(A) operates only where 'survival' occurs, i.e., where the *claim is not extinguished by death.*" (Emphasis added.)

■ In the case *sub judice,* even a cursory reading of the domestic relations court's judgment entries clearly demonstrates the domestic relations court concluded Karen's divorce action did not "survive" her death. Accordingly, the domestic relations court's denial of Kascak's motion to substitute himself as a party in the divorce action was not a declaration by the court that Kascak was not a real party in interest. On the contrary, the court's denial of Kascak's substitution motion was a declaration that since Karen's divorce action did not

survive her death, the issue of substitution of parties in the divorce proceedings was moot.

Based upon the foregoing analysis, it is evident that Kascak as executor of Karen's estate possesses standing to maintain the within appeal.

Appellant's sole assignment of error follows:

"The domestic relations court erred, as a matter of law, by dismissing this action to enforce an antenuptial agreement upon the death of plaintiff-appellant, Karen A. Diemer."

This assignment lacks merit.

■ It is axiomatic that an action for divorce abates and cannot be revived when one of the parties thereto dies. *Hook v. Hook* (1987), 35 Ohio App.3d 51, 519 N.E.2d 687.

In the appeal *sub judice*, neither appellant nor appellee contests the domestic relations court's finding that it lacked jurisdiction to adjudicate Karen's divorce complaint since the divorce action abated upon Karen's death. Appellant, however, argues that while the domestic relations court lacked jurisdiction to hear and determine Karen's complaint for divorce, the within action to enforce the antenuptial agreement survived Karen's demise. Appellant, therefore, maintains the domestic relations court retained jurisdiction, notwithstanding Karen's death, to interpret and enforce the terms of the antenuptial agreement.

Appellee, in contrast, argues that since Karen's divorce complaint was abated by her death, the within action to enforce the antenuptial agreement was also abated. Appellee, therefore, contends that since the domestic relations court lacked jurisdiction to hear Karen's divorce proceeding by virtue of the abatement of the divorce complaint, the court also lacked jurisdiction to enforce the antenuptial agreement.

The foregoing arguments of both parties, thus, raise two distinct issues in the case *sub judice, viz.,* (1) whether Kascak's action for enforcement of the Diemers' antenuptial agreement survived Karen's death and the resulting abatement of Karen's divorce action; and, providing Kascak's action did indeed survive, (2) whether the Domestic Relations Division had subject matter jurisdiction to enforce the Diemers' antenuptial agreement. The issue of survival with respect to Kascak's action for enforcement of the antenuptial agreement shall be considered first.

R.C. 2311.21, the abatement statute, states in relevant part as follows:

"Unless otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both of the parties thereto, except actions for libel,

slander, malicious prosecution, for a nuisance * * * which shall abate by the death of either party."

In *Coffman v. Finney* (1901), 65 Ohio St. 61, 61 N.E. 155, the Ohio Supreme Court addressed, within the context of a divorce action, the issue of survival of an action upon the death of one party while the divorce action was pending. In *Coffman, supra,* the domestic relations court awarded alimony, pursuant to a divorce decree, to the decedent prior to the decedent's death. The issue presented to the Supreme Court was whether the action to enforce the alimony award survived the death of the decedent.

The Supreme Court in *Coffman* began by distinguishing between a pending action to *award* alimony *versus* a pending action to *enforce* an alimony award. The Supreme Court, relying upon the predecessor statute to R.C. 2311.21, stated at 67, 69, 61 N.E. at 156, 157, in relevant part as follows:

"Upon the declaration of divorce by the common pleas [court] for the aggressions of the defendant *the law vested the right in the plaintiff [decedent] to an allowance as alimony from the defendant's real and personal property. This right was an absolute one * * *.*

"We are of the opinion that the claim of [plaintiff] for alimony, at the time of her decease, was a debt against the defendant, *fixed as to the liability,* though subject to variation as to amount, and that *the cause survived in favor of her administrator * * *."* (Emphasis added.)

Thus, in *Coffman,* the Supreme Court found that while an action termed "personal," such as for divorce or for determination and order of an alimony award, abates upon the death of one party to the action, an *action which seeks to enforce fixed rights and liabilities,* such as an action to enforce alimony already awarded, survives the death of that party. The Supreme Court, therefore, established the determining factor with respect to issues of survival of an action to be *whether or not the action seeks to enforce fixed rights and liabilities.* This issue of *survival of an action* is separate and apart from the issue of *jurisdiction.*

In Ohio, an antenuptial agreement executed in good faith, if fair and reasonable under the circumstances, is a binding contract. *Hook v. Hook* (1982), 69 Ohio St.2d 234, 23 O.O.3d 239, 431 N.E.2d 667. Since an antenuptial agreement is a binding contract, an action to enforce such antenuptial agreement constitutes an action to enforce fixed rights and liabilities of the parties to the antenuptial agreement.

In the case *sub judice,* therefore, since Kascak, following Karen's death, sought only to enforce the terms of the Diemers' antenuptial agreement, the within action sought to enforce fixed rights and liabilities contractually entered into by

the Diemers. Pursuant to *Coffman* and R.C. 2311.21, Kascak's action to enforce the terms of the antenuptial agreement survived the demise of Karen.

Appellee, however, would distinguish *Coffman* by the fact that the decedent in *Coffman* had already been granted her divorce by the domestic relations court prior to her death whereas, in the case *sub judice,* Karen's death preceded final resolution of her divorce action. Such distinction is irrelevant, however, since the decision in *Coffman* rested upon only the fact that the decedent's representative in *Coffman* sought to enforce fixed rights and liabilities.

Restated, the fact that the decedent in *Coffman* was granted a divorce prior to death was significant only because the divorce decree itself served to create the fixed rights and liabilities which the decedent's representative, thereafter, sought to enforce. The determination in *Coffman* that the action to enforce the alimony award survived the decedent's death was based solely upon the fact that the alimony award created fixed rights and liabilities which were binding between the original parties to the action.

In the case *sub judice,* Karen's fixed rights and liabilities were contained in the antenuptial agreement executed prior to her marriage to Donald. Karen's fixed rights and liabilities, therefore, were neither contingent nor dependent upon Karen being granted a divorce, as were the fixed rights and liabilities of the decedent in *Coffman.*

As stated *supra,* the issue is, thus, not whether Karen was granted a divorce but, rather, whether Kascak's action on behalf of Karen's estate sought to enforce, as in *Coffman,* fixed rights and liabilities. Having already determined that Kascak's action sought to enforce Karen's fixed rights and liabilities provided by the antenuptial agreement, it follows that Kascak's action survived Karen's demise in accordance with *Coffman.*

In the case *sub judice,* since Kascak's action *survived* Karen's demise, the issue now becomes whether the Domestic Relations Division possessed *jurisdiction* to proceed with enforcement of the antenuptial agreement.

R.C. 3105.011 defines the jurisdiction of the Domestic Relations Division and states in relevant part as follows:

"The court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all *domestic relations matters* * * *." (Emphasis added.)

However, R.C. 3105.171 delimits the jurisdiction of the Domestic Relations Division with respect to the determination and settlement of property disputes and states in relevant part as follows:

"(B) *In divorce proceedings,* the court shall, and *in legal separation proceedings* upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, *the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.*" (Emphasis added.)

■ Thus, it is evident that while the Domestic Relations Division has plenary jurisdiction to determine an equitable division of property between spouses, such jurisdiction is present only during proceedings for divorce or legal separation. Restated, in the absence of pending divorce or separation proceedings, the Domestic Relations Division lacks jurisdiction to distribute property between spouses.

R.C. 2101.24 states in relevant part as follows:

"(A)(1) Except as otherwise provided by law, the probate court has exclusive jurisdiction:

" * * * *

"(c) To direct and control the conduct and *settle the accounts of executors* and administrators *and order the distribution of estates.*" (Emphasis added.)

■ In the case *sub judice,* Karen's divorce action abated upon Karen's death before the domestic relations court commenced proceedings or determined any issues. Thus, Kascak's action to enforce the Diemers' antenuptial agreement was not maintained within the context of pending divorce or separation proceedings. R.C. 3105.171. In addition, pursuant to R.C. 2101.24, enforcement of the Diemers' antenuptial agreement in the case *sub judice* fell within the jurisdiction of the Probate Division. Thus, interpretation and enforcement of the antenuptial agreement did not constitute a "domestic relations matter." R.C. 3105.011. Based upon the foregoing analysis, the domestic relations court lacked jurisdiction to determine the merits regarding the rights and liabilities of the parties in the case *sub judice* with respect to the Diemers' antenuptial agreement. R.C. 3105.171 and 3105.011.

In summary, Kascak, as executor of Karen's estate, possesses standing to maintain the appeal *sub judice* in order to have a review by the appellate court to determine whether the rulings of the domestic relations court were proper. In addition, Kascak's action to enforce the Diemers' antenuptial agreement survived Karen's demise since the antenuptial agreement fixed the rights and liabilities of the parties, or their heirs, under the contract. This determination of survival of the claim is independent of the question regarding which court has jurisdiction.

Furthermore, the domestic relations court lacked subject matter jurisdiction to enforce such antenuptial agreement since no proceedings or determination of any issues had been adjudicated prior to Karen's death by the domestic relations court. Therefore, the domestic relations court neither erred (1) when it dismissed Karen's complaint for lack of jurisdiction nor (2) when it denied Kascak's motion to substitute Kascak as party plaintiff in Karen's divorce action.

More important, the Domestic Relations Division lacked subject matter jurisdiction to adjudicate the distribution of property pursuant to the antenuptial agreement. Therefore, we hold the statements by the domestic relations court referring to the content and interpretation of the antenuptial agreement contained in the October 7, 1993 and November 2, 1993 journal entries did not constitute an adjudication on the merits or determine the rights and liabilities existing between the parties in the case *sub judice.*

Restated, the October 7, 1993 and November 2, 1993 orders do not constitute *res judicata* with respect to the interpretation and determination of the rights and liabilities contained in the antenuptial agreement. The antenuptial agreement now becomes part of Karen Diemer's estate subject to interpretation and determination by the Probate Division.

*Judgment affirmed.*

SPELLACY, P.J., concurs.

JAMES D. SWEENEY, J., concurs in judgment only.