DECISION AND JUDGMENT ENTRY
{¶ 1} This case involves two consolidated appeals: the first involves an appeal of a decision and judgment entry by the Lucas County Court of Common Pleas, Domestic Relations Division, which granted a divorce between appellant, Edward Reams, and appellee, Andrea Putman Reams,[1]
and divided marital property pursuant to the terms of the parties' antenuptial agreement (Case No. DR02-0087); the second involves an appeal of an opinion and judgment entry by the Lucas County Common Pleas, General Division, which granted appellee's motion to dismiss appellant's complaint for an accounting (Case No. CI04-2925). For the following reasons, we affirm the judgment entries of both courts.
 {¶ 2} Appellant and appellee were married on November 21, 1984. Shortly before their marriage, they entered into a valid antenuptial agreement that set forth rules governing the division of their property.
 {¶ 3} On January 23, 2002, appellee filed a complaint for legal separation in the domestic relations division of the court of common pleas. On May 9, 2002, she amended the complaint to a complaint for divorce.
 {¶ 4} The divorce case was litigated in the domestic relations division for over two years following the filing of the complaint for divorce. Eventually, through mediation and a consent judgment entry issued just before trial, the parties were able to resolve custody and visitation issues involving the couple's three children. No such agreement could be reached with respect to the division of property, however.
 {¶ 5} On April 30, 2004, just weeks before trial in the divorce action, appellant filed a "complaint for accounting" in the general division of the court of common pleas seeking "the equal division of dividends, interest, rents, profits and appreciation in increments of value thereupon to which he is entitled under Paragraph 4 of the Antenuptial Agreement."
 {¶ 6} Trial on the divorce action was held before Judge Lewandowski on June 4, 2004. At trial, the judge heard testimony by the parties and arguments by the parties' respective counsel. In addition, appellant's trial counsel proffered various exhibits relating to interpretation of the antenuptial agreement, the division of property, and other related issues.
 {¶ 7} In a written decision, dated August 6, 2004, Judge Lewandowski considered the terms of the antenuptial agreement in determining the division of assets between the parties. Finding that the contract was "complete and unambiguous," "clear on its face," and "the complete agreement of the parties," he specifically excluded extrinsic evidence about the interpretation of the contract.
 {¶ 8} According to Judge Lewandowski, the agreement clearly and unambiguously provided that: (1) any pre-marital property would go to the title holder; (2) any property acquired during the marriage (whether by gift, inheritance or under circumstances that would make it marital) would go to the nominal title holder; (3) any jointly owned property would be governed by the terms of the deed or instrument creating the parties' interests; and (4) neither party would have a claim for alimony (now spousal support), for a property settlement, or for marital property as against an asset held in only one spouse's name.
 {¶ 9} In making this determination, Judge Lewandowski conducted a paragraph by paragraph examination of the entire agreement and found that paragraphs 1 and 2 dealt with the rights of the parties upon death, paragraphs 3 and 4 addressed the rights of the parties during the marriage, and paragraphs 5, 6, and 7 dealt with the rights of the parties in the event of a divorce.
 {¶ 10} Although appellant specifically sought enforcement of paragraph 4 — which provided for the equal division of dividends, interest, rents, profits, and all increments in value on all property — Judge Lewandowski declined grant that remedy, on grounds that it would lead to an "absurd result".
 {¶ 11} The final judgment entry of divorce was filed on August 24, 2004.
 {¶ 12} After journalization of Judge Lewandowski's decision, Judge Foley granted appellee's motion to dismiss the complaint for accounting. In an opinion and judgment entry dated October 13, 2004, Judge Foley found that the matter before him had been fully litigated by the domestic relations division and that he lacked subject matter jurisdiction. It is from these entries that appellant appeals, raising the following assignments of error:
 {¶ 13} "I. IT CONSTITUED ERROR FOR THE DOMESTIC RELATIONS DIVISION TO HOLD THAT ENFORCEMENT OF PARAGRAPH 4 OF THE ANTENUPTIAL AGREEMENT WOULD LEAD TO AN ABSURD RESULT.
 {¶ 14} "II. APPELLANT WAS DENIED A FULL AND FAIR OPPORTUNITY TO LITIGATE HIS RIGHTS UNDER PARAGRAPH 4 OF THE ANTENUPTIAL AGREEMENT IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.
 {¶ 15} "III. THE DOMESTIC RELATIONS DIVISION LACKED JURISDICTION TO ADJUDICATE PARAGRAPH 4 OF THE ANTEMUPTIAL AGREEMENT.
 {¶ 16} "IV. THE JUDGMENT OF THE DOMESTIC RELATIONS DIVISION REGARDING PARAGRAPH 4 OF THE ANTENUPTIAL AGREEMENT WAS NOT ENTITLED TO COLLATERAL ESTOPPEL OR RES JUDICATA EFFECT.
 {¶ 17} "V. IT CONSTITUED ERROR FOR THE GENERAL DIVISION TO DISMISS APPELLANT'S COMPLAINT FOR AN ACCOUNTING."
 {¶ 18} We begin with an examination of appellant's claim, under the first assignment of error, that the domestic relations division erred when it held that enforcement of paragraph 4 of the antenuptial agreement would lead to an absurd result.
 {¶ 19} Appellate courts apply a de novo review of a lower court's interpretation and construction of a written contract, Continental W.Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc. (1996),74 Ohio St.3d 501, 502. And, in general, we interpret valid antenuptial agreements under the same rules of construction that apply to any other contract. See, Fletcher v. Fletcher (1993), 68 Ohio St.3d 464, 467.
 {¶ 20} "The purpose of contract construction is to discover and effectuate the intent of the parties." Musca Props., L.L.C. v. DelalloFine Italian Foods, Inc., 8th Dist. No. 84857, 2005-Ohio-1193, at ¶ 15. "The intent of the parties is presumed to reside in the language they chose to use in their agreement." Id.
 {¶ 21} Judge Lewandowski properly found that the agreement in this case was complete, clear on its face, and unambiguous. Where a contract is clear and unambiguous, its interpretation is a matter of law, InlandRefuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322, and a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties.Seringetti Constr. Co. v. Cincinnati (1988), 51 Ohio App.3d 1, 4.
 {¶ 22} In determining the meaning of the contract, a court must consider all of its parts, and no provision should be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible. State Auto. Ins. v. Childress (Jan. 15, 1997), 1st Dist. No. C-960376. "Construction of the contract should attempt to harmonize all of the provisions rather than create conflicts in them," and the court "must determine whether the contract can be interpreted giving reasonable, lawful, effective meaning to all terms." Id.
 {¶ 23} Paragraph 4 of the antenuptial agreement relevantly states:
 {¶ 24} "After the proposed marriage and during said marriage, all dividends, interest, rents or profits on all property, real or personal (as defined in subparagraphs a, b, and c of paragraph 3 hereof), and all increments in value thereon, which Edward R. Reams and Andrea Putman each own before said proposed marriage or which each may thereafter separately acquire, shall be divided equally between them."
 {¶ 25} Thus, paragraph 4 provides for the sharing of certain property acquired during the marriage. A potentially contradictory provision exists at paragraph 7 of the same agreement. Paragraph 7, which deals with the division of property upon termination of the marriage, reads as follows:
 {¶ 26} "In the event of the termination of the contemplated marriage between the parties, either by divorce, dissolution, or other legal process, it is mutually agreed between said parties that they both hereby release and surrender any and all rights to receive any property settlement from the other."
 {¶ 27} Under paragraph 7, the parties expressly agree that, upon divorce, they relinquish their rights to obtain any property held by the other.
 {¶ 28} Reading paragraphs 4 and 7 in conjunction with one another, it becomes clear that enforcement of paragraph 4 within the context of a divorce proceeding leads to an irresolvable conflict with the express language of paragraph 7.
 {¶ 29} Judge Lewandowski reconciled this inconsistency by refusing to enforce paragraph 4, on the grounds that to do so would lead to two absurd results: (1) it would result in appellee's owing appellant much more than the total value of the marital assets; and (2) it would negate the other paragraphs of the contract, leading to an illogical and absurd meaning to paragraph 4.
 {¶ 30} Our analysis of the contract focuses on the fact that paragraphs 4 and 7 each call for a different and discrepant division of property. Following the mandate that we attempt to harmonize all of the provisions of the antenuptial agreement and give reasonable, lawful, and effective meaning to all of its terms, we conclude that paragraph 4 governs initially, taking precedence over paragraph 7 during the course of the marriage. Upon the initiation of divorce proceedings, paragraph 7 becomes applicable and, by logical necessity, supersedes and, in effect, nullifies paragraph 4 and its terms. Stated otherwise, paragraphs 4 and 7 can be serially, but not simultaneously, enforced.
 {¶ 31} Because we generally agree with Judge Lewandowski's second basis for refusing to enforce paragraph 4 (inasmuch as we find that paragraph 4 is inapplicable in the context of a divorce proceeding), we need not reach the merits of his first, dealing with the amount of money that might be owed under that paragraph. And because we find that Judge Lewandowski did not err in refusing to enforce paragraph 4, we find appellant's first assignment of error not well-taken.
 {¶ 32} Appellant argues in his second assignment of error that he was denied a full and fair opportunity to litigate his rights under paragraph 4, in violation of his constitutional rights. By this argument, appellant addresses Judge Lewandowski's initial grounds for refusing to enforce paragraph 4, i.e., that enforcement of paragraph 4 would result in appellee's owing appellant much more than the total value of the marital assets.
 {¶ 33} As indicated above, paragraph 4 was found inapplicable to a determination of property rights in this case. Obviously, appellant has no right to litigate claims arising from an inapplicable and, therefore, irrelevant, paragraph. Appellant's second assignment of error is therefore found not well-taken.
 {¶ 34} In his third assignment of error, appellant claims that the domestic relations division lacked jurisdiction to adjudicate paragraph 4 of the antenuptial agreement.
 {¶ 35} R.C. 3105.011 relevantly provides that "[t]he court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." In addition, R.C. 3105.171 provides:
 {¶ 36} "(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section,the court has jurisdiction over all property in which one or both spouseshave an interest." (Emphasis added.)
 {¶ 37} The law thus establishes that during proceedings for divorce or separation, the domestic relations division has plenary jurisdiction to determine an equitable division of property between spouses. See Diemerv. Diemer (1994), 99 Ohio App.3d 54, 62.
 {¶ 38} On the basis of the foregoing, we conclude that the domestic relations division had jurisdiction to interpret the entirety of the antenuptial agreement in formulating an equitable division of property between appellant and appellee in their divorce case. Accordingly, we find appellant's third assignment of error not well-taken.
 {¶ 39} Appellant asserts in his fourth assignment of error that the judgment of the domestic relations division regarding paragraph 4 of the antenuptial agreement was not entitled to collateral estoppel or res judicata effect.
 {¶ 40} Judge Foley, in dismissing the complaint for accounting which appellant had filed in the general division, held as follows in his October 12, 2004 opinion and judgment entry:
 {¶ 41} "Here, the Court finds that the Domestic Relations Division issued a Judgment Entry which held that the terms of paragraph four contained in the antenuptial agreement were clear and unambiguous and required no extrinsic evidence on this issue. Accordingly, this Court holds that this issue has been fully litigated by the Domestic Relations Division and that this Court lacks subject matter jurisdiction. Therefore, this Court finds that defendant's motion should be granted."
 {¶ 42} Appellant reads this holding to mean that Judge Foley applied principles of res judicata and collateral estoppel in barring appellant's claim. Appellee reads the holding differently, understanding it to mean that appellant's action was dismissed for lack of subject matter jurisdiction. Because we find the basis of the holding to be somewhat unclear, we consider the positions asserted by both parties.
 {¶ 43} Appellant argues that because the domestic relations division lacked subject matter jurisdiction to adjudicate the rights and liabilities of the parties under paragraph 4 of the antenuptial agreement, the decision by the domestic relations division did not constitute res judicata and, therefore, could not have had collateral estoppel effect upon the appellant's complaint for accounting before the general division. This argument is without merit, however, because, as we indicated in our discussion of appellant's third assignment of error, the domestic relations division did have subject matter jurisdiction to determine the applicability of paragraph 4 and its effect on the parties in the context of the action for divorce.
 {¶ 44} Appellant next argues that it was error for the general division to give res judicata effect to the decision of the domestic relations division because the domestic relations division did not afford him a full and fair opportunity to litigate the proper application of paragraph 4. Again, as indicated above, in our discussion of appellant's second assignment of error, appellant had a full and fair opportunity to litigate his rights concerning the agreement as a whole. Because paragraph 4 was appropriately determined to be inapplicable upon the filing of the parties' action for divorce, appellant had no right to litigate the substance of any claims arising out of that paragraph. We, therefore, reject appellant's argument to the contrary as meritless.
 {¶ 45} We next consider appellee's view that Judge Foley's dismissal was based on a determination that he lacked subject matter jurisdiction over the action. Subject matter jurisdiction gives a court the authority to hear and decide a case on its merits. Nalesnik v. Nalesnik (Apr. 5, 1990), 8th Dist. No. 56614. A court of common pleas has the power to determine its own subject matter jurisdiction in an action before it, subject to a right of appeal. Id. Judge Foley exercised his authority and determined that the antenuptial agreement was within the jurisdiction of the domestic relations division.
 {¶ 46} In Ohio, as between courts of concurrent jurisdiction, the tribunal whose power is first invoked acquires jurisdiction to adjudicate upon the whole issue and to settle the rights of the parties to the exclusion of all other tribunals. John Weenink Sons Co. v. Court ofCommon Pleas (1948), 150 Ohio St. 349, 355; see also, Price v. Privce
(1984), 16 Ohio App.3d 93, 95-96. This priority doctrine has been specifically found to apply in divorce actions. Miller v. Court of CommonPleas (1944), 143 Ohio St. 68, 70.
 {¶ 47} Here, the domestic relations division was the first to exercise jurisdiction and, therefore, had exclusive subject matter jurisdiction over the entirety of the action. The general division was correct in dismissing appellant's case for lack of subject matter jurisdiction. Appellant's fourth assignment of error is therefore found not well-taken.
 {¶ 48} Lastly, we address appellant's fifth assignment of error, wherein he claims that it was error for the general division to dismiss appellant's complaint for an accounting for the reasons previously stated in Assignments of Error Nos. II (alleging denial of a full and fair opportunity to litigate rights under paragraph 4), III (alleging a lack of jurisdiction on the part of the domestic relations division to adjudicate paragraph 4), and IV (alleging that the domestic relations division's judgment was precluded from having collateral estoppel or res judicata effect due to the alleged constitutional and jurisdictional deficiencies). Those reasons have all been demonstrated herein as being without merit: in fact, appellant did have a full and fair opportunity to adjudicate his rights under the agreement; the domestic relations division did have jurisdiction to adjudicate paragraph 4 of the agreement; and the domestic division's judgment regarding paragraph 4 was not precluded as a result of any alleged deficiency from having collateral estoppel and res judicata effect. Accordingly, appellant's fifth assignment of error is found not well-taken.
 {¶ 49} Because all five of appellant's assignments of error are found not well-taken, the judgments of the Lucas County Court of Common Pleas, Domestic Relations Division, and the Lucas County Court of Common Pleas, General Division, are affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
Pietrykowski, J., Singer, P.J., Skow, J., CONCUR.
[1] Although appellee has been repeatedly referred to in the proceedings as Andrea Putnam-Reams or Andrea Putnam Reams, it appears from the record that her name is actually Andrea Putman Reams.