[Cite as *Estate of Jones v. Jones*, 2023-Ohio-2115.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| ESTATE OF MOLLY ANN JONES, | CASE NOS. 2022-G-0031 |
| Plaintiff-Appellee, | 2022-G-0034 |
| - vs - | Civil Appeals from the Court of Common Pleas |
| JEREMY J. JONES, | |
| Defendant-Appellant. | Trial Court No. 2019 DC 000752 |

## O P I N I O N

Decided: June 26, 2023
Judgment: Affirmed

*Jill Friedman Helfman* and *Mary Kate McClain*, Taft Stettinius & Hollister LLP, 200 Public Square, Suite 3500, Cleveland, OH 44114 (For Plaintiff-Appellee).

*Joseph G. Stafford*, *Kelley R. Tauring*, and *Nicole A. Cruz*, Stafford Law Co., LPA, 55 Erieview Plaza, 5th Floor, Cleveland, OH 44114 (For Defendant-Appellant).

*Ann M. D'Amico*, Law Offices of Michael J. Caticchio, 6579 Wilson Mills Road, Macy House, Mayfield Village, OH 44143 (Guardian ad Litem).

MARY JANE TRAPP, J.

{¶1} This case concerns the trial court's jurisdiction to conclude matters following the death of one of the parties in a divorce case before a final divorce decree was issued. Appellant, Jeremy J. Jones ("Mr. Jones"), appeals the judgments of the Geauga County Court of Common Pleas that overruled his motions to dismiss and/or vacate (1) a protective order ("PTO") governing his deceased wife's healthcare records and (2) the

trial court's order requiring him to pay the Special Master's deposit it originally assessed against him in 2021.

{¶2} Mr. Jones raises two assignments of error on appeal, contending the trial court erred as a matter of law and abused its discretion by (1) issuing judgment entries without jurisdiction following the death of his spouse, Molly Jones ("Mrs. Jones"), and (2) granting the Special Master's motion for fees after dismissal of the action.

{¶3} After a careful review of the record and pertinent law, we find Mr. Jones' assignments of error to be without merit. The instant action survives to enforce the fixed rights and liabilities of the parties, i.e., Mrs. Jones' right to have her healthcare records remain confidential and/or destroyed pursuant to the trial court's June 2021 PTO and July 5, 2022 PTO and the required deposit for the Special Master's fees, which the court ordered Mr. Jones to pay in May 2021. The court issued these judgment entries long before Mrs. Jones' untimely passing.

{¶4} The judgments of the Geauga County Court of Common Pleas are affirmed.

### Substantive and Procedural History

{¶5} This case has a tortured and convoluted history with discovery delays and multiple continuances of the trial, along with intervening appeals and original actions. *See*, *e.g.*, *Jones v. Jones*, --- N.E.3d ---, 2023-Ohio-989 (11th Dist.); *State ex rel. Jones v. Paschke*, 2021-G-0013, 2021-Ohio-2889; *State ex rel. Jones v. Paschke*, 168 Ohio St.3d 93, 2022-Ohio-2427, 195 N.E.3d 1031. Mr. and Mrs. Jones were married in April 2015. One child was born as issue of the marriage.

{¶6} In September 2019, Mrs. Jones filed for divorce. In turn, Mr. Jones answered and filed a counterclaim for a divorce. After much delay, the final divorce trial

2

began in March and the beginning of April 2022. Trial was set to recommence in September and October 2022; however, Mrs. Jones died on July 2, 2022. The court issued a judgment entry several days later dismissing the action and all pending motions. The court also assessed court costs against Mr. Jones.

{¶7} In relevant part to this appeal, we set forth the history of the case below as it pertains to (1) the Special Master's fees and (2) the PTO(s) governing the parties' healthcare records.

### Appointment of a Special Master

{¶8} In May 2021, the trial court issued a judgment entry noting the matter had been pending for 20 months and the parties were embroiled in a discovery dispute. The court concluded it was necessary to appoint a special master. After listing the duties and responsibilities of the special master, the court further ordered, "the Special Master shall be compensated for his services at the rate of $150.00 per hour. [Mr. Jones] shall deposit with the Special Master, the sum of **$1,500** to be applied to Special Master fees as incurred and billed by the Special Master. The deposit required herein shall be made by [Mr. Jones ] to the Special Master within ten (10) days of the date of this Order.

{¶9} "The Special Master shall submit a final bill to the Court for approval prior to paying himself from funds on deposit. The Special Master shall petition the Court for additional deposits after depletion of funds on deposit. The Special Master fees paid by the funds deposited by [Mr. Jones] shall be subject to orders of reimbursement by this Court."

{¶10} After Mrs. Jones' untimely passing, the Special Master filed a "Request for Payment of Fees." Attached to the Special Master's request were his final bill and his

3

affidavit in which he attested Mr. Jones never paid the May 2021 court-ordered deposit of $1,500, he was required to submit a final bill for approval, and he was requesting payment in the amount of $1,185.

{¶11} One day later, Mr. Jones filed a "Motion to Dismiss Request for Payment," in which he contended the court was divested of jurisdiction upon Mrs. Jones' passing on July 2, 2022.

{¶12} In turn, the Special Master filed an "Opposition to Defendant's Motion to Dismiss Request for Payment." The Special Master noted the trial court had already decided the Special Master's compensation in the May 2021 judgment entry, Mr. Jones had failed to pay the $1,500 deposit pursuant to the court's order, and he was simply seeking enforcement of a fixed obligation already decreed and ordered by the court. He also attached an email from April 21, 2022, in which he reminded Mr. Jones' counsel of Mr. Jones' obligation to deposit $1,500.

{¶13} Mr. Jones filed a "Reply to Non-Party's Brief in Opposition to Defendant's Motion to Dismiss Request for Payment," reiterating his argument that the trial court was divested of jurisdiction and the Special Master's request for payment of his fees was improper.

{¶14} The trial court denied Mr. Jones' motion to dismiss, finding it remained empowered to enforce its May 2021 judgment entry requiring Mr. Jones to deposit $1,500 on or before June 5, 2021. The court noted Mr. Jones failed to comply without any explanation, and further, remains responsible for the deposit of $1,500 to the Special Master. The court ordered Mr. Jones to pay the deposit without delay, but no later than

4

ten days from the filing of the order. Upon receipt, the Special Master was directed to comply with the May 2021 order and refund any balance to Mr. Jones without delay.

### Healthcare Protection Order

{¶15} In June 2021, the court issued a protective order judgment entry ("PTO") to govern the use and disclosure of all healthcare records and communications that may be confidential and/or privileged under Ohio law and/or federal law. Of note, the order included a provision that the PTO shall remain in effect after dismissal or entry of final judgment not subject to appeal and that within 45 days after dismissal/final judgment, all confidential information shall be destroyed by all parties and counsel, and a written certification shall be filed with the court attesting to such timely destruction.

{¶16} Shortly before Mrs. Jones' death, in June 2022, Mrs. Jones filed a "Motion for Protective Order" to specifically prohibit University Hospitals Cleveland Medical Center ("UH") from disclosing any of her medical records to Mr. Jones, who had issued a subpoena to UH. She further alleged Mr. Jones had issued the subpoena to UH to disclose her medical records without giving her a reasonable opportunity to request a protective order, as he had done with previous healthcare subpoenas.

{¶17} On July 5, 2022, the magistrate issued an order granting Mrs. Jones' motion for a PTO (the "UH PTO"), finding the issue of Mrs. Jones' medical records was moot due to her death and it was not necessary for UH to respond to Mr. Jones' subpoena. The magistrate ordered UH not to respond to Mr. Jones' subpoena and ordered Mr. Jones to destroy all healthcare records relating to Mrs. Jones that were in his care or control without delay.

5

{¶18} On the same day, Mr. Jones filed a "Motion to Dismiss/Motion to Vacate July 5, 2022 Magistrate's Order." Mr. Jones contended the trial court's order was void ab initio because the divorce action was dismissed upon Mrs. Jones' death. He further contended that "as the surviving spouse and sole legal custodian of the minor child, [he] has a right to the records and documentation of [Mrs. Jones]."

{¶19} In early August, the trial court denied Mr. Jones' motion, finding that "in the absence of a Protective Order relating to dissemination of [Mrs. Jones'] health information in this case, the Magistrate's Order issued on July 5, 2022 was appropriate as it appears intended to protect [Mrs. Jones'] rights under HIPPA (45 C.F.R. 1601.103(2)(v)) * * *." The court further noted the order does not prejudice Mr. Jones' rights, it is consistent with the Supreme Court of Ohio's desire to protect individual's identifiable information, and Mrs. Jones' health information and records were irrelevant at this juncture because Mrs. Jones is deceased, the parties' claims are moot, and the case was dismissed.

{¶20} Mr. Jones raises two assignments of error on appeal:

{¶21} "[1.] The trial court erred as a matter of law and abused its discretion in issuing Judgment Entries while devoid of jurisdiction following the death of the Appellee, Molly A. Jones (f.k.a. Molly A. Paschke).

{¶22} "[2.] The trial court erred as a matter of law and abused its discretion by granting the 'Special Master's' Motion for Fees after the dismissal of the action."

{¶23} In Mr. Jones' first assignment of error, he contends the trial court's judgment entries denying his motions to dismiss and/or vacate and granting the Special Master's fees and Mrs. Jones' UH PTO are void because the divorce action was dismissed upon Mrs. Jones' death. Thus, he alleges the trial court was without subject matter jurisdiction

6

to act. In his second assignment of error, he similarly contends the court erred by ordering him to pay the Special Master's fees.

**{¶24}** Because his assignments of error concern the same argument, i.e., whether the trial court had jurisdiction to enforce its prior orders after the action was dismissed, we will address them together.

### Standard of Review

**{¶25}** Mr. Jones is challenging the trial court's denial of his motions to dismiss and to vacate.

**{¶26}** A court's review of a common law motion to vacate, i.e., a motion to vacate due to a void judgment, is reviewed under an abuse of discretion standard. *Jones v. Jones*, *supra*, at ¶ 11. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

**{¶27}** An appellate court's standard of review for a trial court's actions regarding a motion to dismiss is de novo. *Lanza v. Lanza*, 11th Dist. Geauga No. 2020-G-0244, 2020-Ohio-6805, ¶ 17. Further, a determination as to whether the trial court has subject matter jurisdiction is also reviewed de novo. *Dilley v. Dilley*, 11th Dist. Geauga No. 2017-G-0115, 2017-Ohio-8439, ¶ 15.

**{¶28}** "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Bank of Am. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19. "If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment

7

to be voidable rather than void." *Id.*, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992 (2004), ¶ 12.

## Trial Court Jurisdiction

{¶29} Mr. Jones contends the trial court was divested of jurisdiction upon the death of Mrs. Jones because the action was dismissed before the issues were resolved and a final decree was issued.

{¶30} Mr. Jones is correct that the provisions of R.C. 2311.21 generally provide that no action or proceeding pending in any court shall abate by the death of a party except actions for libel, slander, malicious prosecution, nuisance, or against a judge of a county court for misconduct of office. *Anderson v. Anderson*, 2017-Ohio-2827, 86 N.E.3d 349, ¶ 15 (4th Dist.). While R.C. 2311.21 does not explicitly denote divorce actions, when one or both parties to a divorce case dies before the final decree, the action abates (because circumstances have achieved the primary objective sought). *Id.*; *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 99, 671 N.E.2d 236 (1996).

{¶31} The divorce action was dismissed upon Mrs. Jones' death, however, the trial court continues to be empowered to enforce fixed rights and liabilities of the parties already determined, which in this case, includes the PTOs governing healthcare records and the payment of the Special Master's deposit.

{¶32} The Supreme Court of Ohio established this principle over 100 years ago in *Coffman v. Finney*, 65 Ohio St. 61, 61 N.E. 155 (1901). The Eighth District succinctly summarized this case in *Diemer v. Diemer*, 99 Ohio App.3d 54, 649 N.E.2d 1285 (8th Dist.1994):

8

{¶33} "[T]he Ohio Supreme Court addressed, within the context of a divorce action, the issue of survival of an action upon the death of one party while the divorce action was pending. In *Coffman*, *supra*, the domestic relations court awarded alimony, pursuant to a divorce decree, to the decedent prior to the decedent's death. The issue presented to the Supreme Court was whether the action to enforce the alimony award survived the death of the decedent.

{¶34} "The Supreme Court in *Coffman* began by distinguishing between a pending action to *award* alimony *versus* a pending action to *enforce* an alimony award. The Supreme Court, relying upon the predecessor statute to R.C. 2311.21, stated at 67, 69, 61 N.E. at 156, 157, in relevant part as follows:

{¶35} "'Upon the declaration of divorce by the common pleas [court] for the aggressions of the defendant *the law vested the right in the plaintiff [decedent] to an allowance as alimony from the defendant's real and personal property. This right was an absolute one* * * *.

{¶36} "'We are of the opinion that the claim of [plaintiff] for alimony, at the time of her decease, was a debt against the defendant, *fixed as to the liability,* though subject to variation as to amount, and that *the cause survived in favor of her administrator* * * *.' (Emphasis added.)

{¶37} "Thus, in *Coffman*, the Supreme Court found that while an action termed 'personal,' such as for divorce or for determination and order of an alimony award, abates upon the death of one party to the action, an *action which seeks to enforce fixed rights and liabilities*, such as an action to enforce alimony already awarded, survives the death of that party. The Supreme Court, therefore, established the determining factor with

9

respect to issues of survival of an action to be *whether or not the action seeks to enforce fixed rights and liabilities.* This issue of *survival of an action* is separate and apart from the issue of *jurisdiction.*" (Emphasis sic.) *Id.* at 60. *See also Durgin v. Durgin*, 8th Dist. Cuyahoga No. 98888, 2013-Ohio-1897, ¶ 23-26 (temporary support order properly dismissed upon husband's death since no rights and obligation of the parties regarding spousal support had been fixed).

**{¶38}** Applying the "fixed rights and obligations" principle set forth in *Coffman*, the instant action survives to enforce the fixed rights and liabilities of the parties, i.e., Mrs. Jones' right to have her healthcare records remain confidential pursuant to the trial court's June 2021 PTO and July 5 UH PTO and the deposit for the Special Master's fees, which the court ordered Mr. Jones to pay in May 2021.

**{¶39}** For instance, in *Concepcion v. Concepcion*, 131 Ohio App.3d 271, 722 N.E.2d 176 (3d Dist.1999), the husband died while the divorce action was still pending in the trial court, and the court had yet to reach any decision on the merits of the issues. *Id.* at 277. The court had issued a temporary restraining order to preclude the husband from changing the beneficiaries of his life insurance policies. *Id.* Prior to his death, however, the husband changed the beneficiary and, further, filed a fraudulent affidavit with the court attesting he did not do so. *Id.* at 278. Similar to Mr. Jones, the husband's estate made the argument that the divorce action abated upon his death, which also extinguished the temporary restraining order. *Id.* at 277. The court explicitly rejected this argument, determining that the effect of the trial court's temporary restraining order was to preserve the action, an issue wholly separate and apart from the issue of jurisdiction. *Id.* The court concluded that his wife, now widow, had set forth sufficient facts to meet the clear and

10

convincing standard of proof needed for the imposition of a constructive trust for the life insurance policy proceeds. *Id.* at 279.

**{¶40}** Mr. Jones also contends the Supreme Court of Ohio's holding in *Torres Friedenberg v. Friedenberg*, 161 Ohio St.3d 98, 2020-Ohio-3345, 161 N.E.3d 546, a plurality opinion, stands for the proposition that the patient-physician privilege does not apply in divorce proceedings. That, however, is an overly broad and exaggerated interpretation of the court's holding.

**{¶41}** Firstly, the court recognized that the filing of a civil action that triggers R.C. 2317.02(B)(1)(a) (which states that the privilege does not apply and that a physician may be compelled to testify) does not mean every communication between the patient and his or her physician is subject to disclosure. *Id.* at ¶ 20. Rather, the physician may testify or be compelled to do so only to a communication that is "related casually or historically to physical or mental injuries relevant" in the civil action filed by the patient. *Id.*, quoting *Leopold v. Ace Doran Hauling & Rigging*, 136 Ohio St.3d 257, 2013-Ohio-3107, 994 N.E.2d 431, paragraph three of the syllabus; *see also* R.C. 2317.02(B)(3)(a). "Thus, the *reach of the exception is limited*, so as to minimize the amount of information that is not protected." (Emphasis added.) *Friedenberg* at ¶ 20.

**{¶42}** Secondly, the court held that where there is a dispute regarding the privileged records as they relate to the issues of custody or spousal support, the court should use an in camera review to determine their relevancy and limit their disclosure pursuant to R.C. 2317.02(B)(3)(a). *Id.* at ¶ 35.

**{¶43}** Thirdly, the court cited *Hageman v. Southwest Gen. Health Ctr.*, 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153, which specifically held that "when the cloak

11

of confidentiality that applies to medical records is waived for the purposes of litigation, the *waiver is limited to that case.* An attorney can certainly use medical records obtained lawfully through the discovery process *for the purposes of the case at hand*—e.g., submitting them to expert witnesses for analysis or introducing them at trial. However, an attorney may be liable to an opposing party for the unauthorized disclosure of that party's medical information that was obtained through litigation. Thus, * * * we conclude that an independent tort exists to provide an injured individual with a remedy for such an action." (Emphasis added.) *Id.* at ¶ 17. Therefore, the disclosed privileged information relates only to the case at hand and is protected—even without a protection order—from the opposing party's use after the case ends.

{¶44} By extension, an explicit protection order over parties' confidential records continues to exist after a case ends. As the Supreme Court of Ohio noted in *State ex rel. Conkle v. Sadler*, 99 Ohio St.3d 402, 2003-Ohio-4124, 792 N.E.2d 1116, "a protective order that on its face survives the underlying litigation continues to be effective even after the underlying case has been dismissed." *Id.* at ¶ 11.

{¶45} The court quoted the federal court's observation (which also rejected the appellant's claim in a federal suit that the trial court's protective order expired with the dismissal of the underlying case):

{¶46} "'In this case, on its face, the protective order at issue survives the termination of the underlying litigation. Not only did it specifically state that confidential documents were not to be used for any purpose other than that judicial proceeding, but it also stated that all confidential material was to be returned to the producing party within sixty days after entry of a final order in that case. *This language clearly imposes*

Case Nos. 2022-G-0031, 2022-G-0034

*obligations meant to survive the termination of the action.* If the parties were free to disclose confidential information upon dismissal of a case, protective orders would cease to fulfill their intended purpose which is to encourage full disclosure of all relevant information. The [trial court] retained jurisdiction to modify the protective order and, if Plaintiffs wished to use deposition testimony subject to that order in support of their memorandum in opposition, they should have sought modification of that order from the issuing court.'" (Emphasis added.) *Id.* at ¶ 12, quoting *Yates v. Applied Performance Technologies, Inc.*, 205 F.R.D. 497, 501 (S.D.Ohio 2002).

**{¶47}** Finally, the court pointed out that simply because appellee's motion for contempt was filed *after* the dismissal does not necessitate the finding that the trial court patently and unambiguously lacked jurisdiction over it. *Id.* at ¶ 13. Just as in this case, the court and the parties agreed that the court would retain jurisdiction over the order's enforcement, given the specific language used. *Id.*

**{¶48}** While the trial court omitted any mention of the June 2021 PTO in its July 5, 2022 UH PTO, that order is still in effect, and the court does not "patently and unambiguously" lack jurisdiction to enforce it. It comprehensively protects both parties' confidential healthcare records and ordered the parties to destroy them within 45 days of dismissal or a final divorce decree.

**{¶49}** Similarly, the obligation to pay a fee pursuant to a court order does not disappear simply because a case was dismissed. This is a fixed liability that Mr. Jones never challenged and, we note, failed to pay in a timely manner.

**{¶50}** In sum, the instant action survives to enforce the fixed rights and liabilities of the parties. The court retained jurisdiction to enforce its orders, i.e., the comprehensive

13

June 2021 PTO, the July 5, 2022 UH PTO, and the May 2021 order requiring Mr. Jones to pay the Special Master's deposit.

{¶51} Finding Mr. Jones' assignments of error to be without merit, the judgments of the Geauga County Court of Common Pleas are affirmed.


JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.

14