[Cite as *Rodeno v. Mezenski*, 2022-Ohio-1176.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

PETER RODENO, EXECUTOR OF THE :
ESTATE OF DANIEL A. RODENO,

                                      No. 111030

      Plaintiff-Appellee,     :

      v.                      :

ALAN MEZENSKI, GUARDIAN OF    :
KAREN L. RODENO,

      Defendant-Appellant.     :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 7, 2022

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Domestic Relations Division
Case No. DR-18-372371

---

***Appearances:***

Eloff and Wilson, L.L.P., Kathryn Gonser Eloff and James
Matthew Wilson; Milano Attorneys & Counselors at Law,
Jay Milano and Kate Pruchnicki, *for appellee.*

Mark A. Ziccarelli, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} In this accelerated appeal, appellant Alan Mezenski, guardian of

Karen L. Rodeno, appeals from the trial court's order denying his motion for relief

from judgment pursuant to Civ.R. 60(B)(5). Mezenski sought to vacate the trial court's final judgment entry of divorce, which granted a divorce between Daniel Rodeno ("Daniel") and Mezenski's sister, Karen Rodeno ("Karen"), divided assets and liabilities and ordered the payment of spousal support to Karen. Mezenski claimed that Karen was entitled to relief from judgment under Civ.R. 60(B)(5) because (1) Karen was incompetent at the time of the divorce decree and (2) it was "no longer equitable to enforce" the divorce decree. Mezenski contends that the trial court abused its discretion in failing to appoint a guardian ad litem to protect Karen's interests during the divorce proceedings and in denying his motion without a hearing because the motion set forth sufficient operative facts entitling Karen to relief from judgment under Civ.R. 60(B)(5).

{¶ 2} For the reasons that follow, we affirm.

**Procedural and Factual Background**

{¶ 3} Daniel and Karen were married on October 8, 1993. They had no children together. On June 15, 2018, Daniel filed a complaint for divorce, alleging that the couple was incompatible. Karen was personally served with a copy of the complaint, but she did not file an answer and she did not appear for the divorce hearing held on August 24, 2018. Following the hearing, the trial court issued a divorce decree (the "divorce decree"), granting the parties a divorce based on incompatibility, dividing the parties' "separate property, marital property and debts acquired during the marriage" and ordering Daniel to pay Karen $3,000 a month in spousal support for 48 months.

{¶ 4} Daniel was awarded the parties' interest in two residential properties located in Westlake, Ohio and Berea, Ohio and was assigned the debt associated with those properties, $321,888 and $93,446.32, respectively. He was also awarded savings and checking accounts valued at $12,000, an IRA valued at $567,410.87, an investment account valued at $93,817.87 and a 2011 Mercedes E350 valued at $18,000. Karen was awarded a checking account valued at $125, personal jewelry valued at $2,000, an IRA valued at $80,962.73 and an investment account valued at $2,200. Karen also retained a monthly social security benefit of $1,569.10 and a monthly pension benefit of $419.96.

{¶ 5} The trial court found that the division of property, "though not equal," was "equitable" because the marriage was "a second marriage for both" parties and "a significant portion" of Daniel's IRA was "premarital." The trial court's August 24, 2018 journal entry, at the conclusion of the section addressing spousal support, states that "[t]he [c]ourt shall not retain jurisdiction to modify this order."

{¶ 6} Daniel died on May 28, 2020. On October 1, 2020, the probate court appointed Mezenski guardian of Karen's person and estate in *In the Matter of the Guardianship of Karen Rodeno*, Cuyahoga P.C. No. 2020GRD254156 (the "probate case").

{¶ 7} On May 25, 2021 — more than two-and-one-half years after the parties' divorce — Mezenski filed a "motion for relief from judgment of August 24, 2018 and request for full evidentiary hearing." Mezenski requested that the trial court vacate the divorce decree and "grant [Karen] relief from the division of assets

and liabilities and the non-payment [sic] of spousal support." Mezenski claimed that Karen's incompetence, combined with an inequitable property division, the payment of inadequate spousal support, Karen's failure to enter an appearance in the divorce proceeding, Daniel's "knowledge of her incompetence, yet proceeding to a divorce" and the trial court's failure to appoint a guardian ad litem to protect her interests pursuant to Civ.R. 17(B) constituted "any other reason justifying relief from judgment" under Civ.R. 60(B)(5).

{¶ 8} Mezenski asserted that, at the time of the divorce proceedings, Karen was 67 years old and had been living in an assisted living facility for several years. He claimed that "medical evidence," including two "expert evaluations," established that Karen had been diagnosed with Parkinson's Disease with dementia, had severe cognitive and physical impairment and was unable to care for herself or manage her finances and property. Mezenski further asserted that the division of assets and liabilities set forth in the divorce decree was "no longer prospectively equitable" because (1) the divorce decree provided a "minimal amount of spousal support of only four (4) years on a twenty-five (25) year marriage," (2) the Westlake, Ohio property had "a value in 2018 according to the Cuyahoga County website of over $657,000.00 * * * leaving equity of approximately $330,000.00, which was retained by [Daniel]," (3) the Berea, Ohio property awarded to Daniel had a "value of over $115,000.00" according to "[t]he Cuyahoga County's website," "with only $93,000.00 owed" and (4) "[Daniel] retained the savings account, checking account, IRA, and a motor vehicle, worth in excess of $691,000.00, whereas [the

value of the] assets that [Karen] retained was a little over $85,000.00." Mezenski also alleged that Daniel had "an ownership interest in a very successful business" that was "not disclosed at the time of the divorce."

{¶ 9} Mezenski claimed that the lengthy delay in filing the motion was because he had "only recently" acquired "evidence that [Karen] had an expert evaluation completed on December 7, 2017 indicating her incompetence" and due to delays in opening an estate following Daniel's death "in which to initiate litigation concerning this matter." The motion was served on appellee Peter Rodeno, executor of the estate of Daniel A. Rodeno ("Peter"), on or about June 14, 2021.

{¶ 10} On July 15, 2021, Mezenski filed an "amended motion" for relief from judgment in which he submitted four exhibits in support of his motion: (1) a copy of the August 24, 2018 divorce decree, (2) a copy of a statement of expert evaluation (Probate Court Form 17.1) executed by Michael J. Dobrovich, D.O., relating to an evaluation of Karen conducted on July 23, 2020, (3) a copy of the October 1, 2020 magistrate's decision and "judgment entry granting guardianship" in the probate case and (4) a copy of a July 17, 2020 letter from Mezenski's counsel to Dr. Hubert Fernandez, indicating that he had been retained to file a guardianship for Karen and requesting that he complete and sign a statement of expert evaluation (Probate Court Form 17.1) for Karen, and a copy of a statement of expert evaluation, signed by an unidentified evaluator on September 3, 2020, purportedly relating to an evaluation of Karen conducted at the Cleveland Clinic on December 7, 2017.

{¶ 11} Peter opposed the motion on the grounds that Mezenski could not satisfy the requirements for relief under Civ.R. 60(B). Peter argued that the motion should be denied because (1) Mezenski's motion was not supported by "sworn allegations of operative fact" or operative facts that were otherwise "in a form that meets evidentiary standards," (2) Mezenski had not established any grounds for relief under Civ.R. 60(B), (3) Mezenski's motion was not filed within a reasonable time and (4) Mezenski had failed to establish that he has a meritorious claim or defense because (i) the divorce proceedings abated upon Daniel's death (and, as such, the trial court lacked jurisdiction to do anything other than enforce the rights fixed by the divorce decree pursuant to R.C. 2101.24 and 3105.011), (ii) the trial court lacked jurisdiction to modify the spousal support award or property division pursuant to R.C. 3105.18 and 3105.171 and (iii) any claims against Daniel's estate would be time-barred under R.C. 2117.06.

{¶ 12} On October 28, 2021, the trial court denied the motion, indicating that it was "constrained" by the holdings in *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, and *Walsh v. Walsh*, 157 Ohio St.3d 322, 2019-Ohio-3723, 136 N.E.3d 460. Specifically, the trial court held that because the divorce decree did not reserve jurisdiction to modify spousal support or the property division and because the motion was filed "almost three years after the decree," the court was "without jurisdiction to grant the relief sought."

{¶ 13} Mezenski appealed, raising the following three assignments of error for review:

Assignment of Error No. 1:
The trial court abused its discretion by failing to grant appellant's motion for relief from judgment without holding a hearing where appellant has alleged operative facts warranting relief under Civ.R. 60(B)(5).

Assignment of Error No. 2:
The trial court abused its discretion by failing to appoint a guardian ad litem for the protection of appellant pursuant to Ohio Civ.R. 17(B), as she was an incompetent person.

Assignment of Error No. 3:
The trial court abused its discretion by dismissing appellant's motion for relief from judgment based on its conclusion that it was without jurisdiction to grant the relief requested.

{¶ 14} Mezenski's assignments of error are interrelated. Accordingly, we address them together.

**Law and Analysis**

{¶ 15} Pursuant to Civ.R. 60(B), "[o]n motion and upon such terms as are just," a trial court "may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons":

> (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

{¶ 16} To prevail on a motion for relief from judgment, the moving party must demonstrate that: (1) the party has a meritorious defense or claim to present

if the relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1)-(5) and (3) the motion is made within a reasonable time. *Internatl. Total Servs. v. Estate of Nichols*, 8th Dist. Cuyahoga No. 107751, 2019-Ohio-4572, ¶ 7, citing *GTE Automatic Elec. v. ARC Industries*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus.

{¶ 17} Civ.R. 60(B) "strikes a balance between the finality of judgments and a perfect result 'by vesting the courts with broad, but not unlimited authority to set aside judgments.'" *Ouellette v. Ouellette*, 2020-Ohio-705, 152 N.E.3d 528, ¶ 10 (6th Dist.), quoting *Knapp v. Knapp*, 24 Ohio St.3d 141, 145, 493 N.E.2d 1353 (1986). The trial court has discretion both in deciding a motion for relief from judgment under Civ.R. 60(B) and in determining whether to hold an evidentiary hearing on the motion. *Kostoglou v. Fortuna*, 8th Dist. Cuyahoga No. 107937, 2019-Ohio-5116, ¶ 21, citing *Williams v. Wilson-Walker*, 8th Dist. Cuyahoga No. 95392, 2011-Ohio-1805, ¶ 7; *GMAC Mtge., LLC v. Coleff*, 8th Dist. Cuyahoga No. 98917, 2013-Ohio-2462, ¶ 10. As such, we review a trial court's ruling on a Civ.R. 60(B) motion for abuse of discretion. *Internatl. Total Servs.* at ¶ 6, citing *Bank of N.Y. v. Elliot*, 8th Dist. Cuyahoga Nos. 97506 and 98179, 2012-Ohio-5285, ¶ 25. A trial court abuses its discretion where its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 18} A decision is unreasonable when "no sound reasoning process" supports that decision. *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of

discretion also occurs when a court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Franciscan Communities, Inc. v. Rice*, 8th Dist. Cuyahoga No. 109889, 2021-Ohio-1729, ¶ 33, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.); *see also Ockunzzi v. Smith*, 8th Dist. Cuyahoga No. 102347, 2015-Ohio-2708, ¶ 9 ("'Abuse of discretion' is a term of art, describing a judgment neither comporting with the record, nor reason."); *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985) ("'In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'"), quoting *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984).

{¶ 19} Mezenski argues that the trial court abused its discretion in denying his motion for relief from judgment without a hearing because his motion and supporting materials set forth sufficient operative facts entitling him to relief from judgment under Civ.R. 60(B)(5).

{¶ 20} The trial court denied Mezenski's motion on the ground that it lacked jurisdiction "to grant the relief sought," citing the Ohio Supreme Court's decisions in *Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, and *Walsh*, 157 Ohio St.3d 322, 2019-Ohio-3723, 136 N.E.3d 460.

{¶ 21} In *Morris*, the Ohio Supreme Court held that "a trial court does not have jurisdiction under Civ.R. 60(B) to vacate or modify an award of spousal support in a decree of divorce or dissolution when the decree does not contain a reservation of jurisdiction to modify the award of * * * spousal support pursuant to R.C. 3105.18(E)."[1] *Id.* at ¶ 63. In that case, the appellant filed a motion for relief from judgment pursuant to Civ.R. 60(B)(4) and/or (5) more than 11 years after the parties' dissolution was finalized. The dissolution decree incorporated a separation agreement that required appellant to pay his ex-wife $1,300 a month in spousal support for her lifetime. The separation agreement further provided that "[t]he [c]ourt shall not have continuing jurisdiction on this subject." Appellant requested that the trial court vacate the spousal support award based on the fact that appellant's annual income had sharply decreased from about $100,000 at the time of the dissolution to less than $4,000. *Id.* at ¶ 4-8.

---

[1] R.C. 3105.18(E) states, in relevant part:

[I]f a continuing order for periodic payments of money as spousal support is entered in a divorce or dissolution of marriage action that is determined on or after January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.

{¶ 22} The court held that "Civ.R. 60(B), a procedural rule, cannot override the substantive law of R.C. 3105.18" and, therefore, "may not operate to vacate an award of spousal support, because the only proper mechanism to modify such an award is the substantive law — i.e., R.C. 3105.18." *Id.* at ¶ 55, 57. The court explained:

> In R.C. 3105.18(E), the General Assembly has established the limits of a trial court's jurisdiction to modify an award of spousal support. And a party's request for modification falls within those statutory limits only if the parties agree or the court orders that jurisdiction be reserved. In other words, the trial court must first determine whether the decree of divorce or dissolution contains a reservation of jurisdiction. If the trial court lacks jurisdiction to modify, then the inquiry of the court ends there. To permit a trial court to exercise jurisdiction on the authority of Civ.R. 60(B) in the absence of a reservation of jurisdiction would make the force of the procedural rule greater in scope than the substantive right the General Assembly established in R.C. 3105.18(E). Because Civ.R. 60(B) is a procedural rule, it cannot override the substantive law of R.C. 3105.18(E). *See* Ohio Constitution, Article IV, Section 5(B).

> * * *

> In the case before us today, jurisdiction to modify the decree was not reserved in the trial court. Therefore, if * * * the trial court determined that appellant was entitled to relief under Civ.R. 60(B), then the court would be required to vacate the decree of dissolution and restore the marriage, which was terminated nearly 16 years ago. This would be antithetical to our principle of the finality of judgments, which ensures "certainty in the law and public confidence in the system's ability to resolve disputes." * * *

> It has been nearly 28 years since this court announced its holding in [*Crouser v. Crouser*, 39 Ohio St.3d 177, 529 N.E.2d 1251 (1988)] that Civ.R. 60(B), a procedural rule, cannot override the substantive law of R.C. 3105.18. Since that time, the General Assembly has not amended R.C. 3105.18(E) to confer upon the trial court jurisdiction to modify a continuing obligation of spousal support when there is fraud, mistake, or misrepresentation. Perhaps the General Assembly is not inclined to

do so because it knows that under the statutory scheme that it has enacted, in an action for divorce, a trial court always has discretionary authority to order the inclusion of a modification provision, even when the parties have reached their own full or partial agreement * * *. Absent legislative action, the authority of *Crouser* stands.

*Id.* at ¶ 57, 59, 62.

{¶ 23} In *Walsh*, 157 Ohio St.3d 322, 2019-Ohio-3723, 136 N.E.3d 460, the Ohio Supreme Court considered the impact of R.C. 3105.171(I) on a trial court's ability to grant Civ.R. 60(B) relief with respect to the division of property set forth in a final divorce decree. R.C. 3105.171(I) states that a property division made in a divorce decree "is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses." The *Walsh* Court held that "[t]hough *Morris* dealt with spousal support, rather than a property distribution, the same principle applies: Civ.R. 60(B) cannot be used to alter the statutory requirements for the modification of a decree. Because R.C. 3105.171(I) does not permit modification absent the consent of both parties, Civ.R. 60(B) cannot provide a workaround." *Walsh* at ¶ 23.

{¶ 24} In *Walsh*, the trial court granted relief from judgment under Civ.R. 60(B) to modify a divorce decree that divided pension benefits even though both parties had not agreed to the modification. In that case, the parties' divorce decree, which adopted a consent judgment of divorce, provided that the wife would receive a share of the husband's military pension based upon a marriage term of six years, representing the period of time the parties had been together during the husband's military service. *Id.* at ¶ 1-5. The decree further provided that a consulting firm

would prepare a qualified domestic relations order ("QDRO") to implement the pension division and that the trial court would retain jurisdiction over the QDRO. *Id.* at ¶ 4-5. When the consultant attempted to draft the QDRO, it determined that it could not draft a QDRO under which the wife would receive direct pension payments from the military because the divorce decree did not specify the wife's share of the husband's pension in percentage terms and because it did not comply with the military's "10/10 rule." Under the "10/10 rule," in order for a portion of a service member's pension benefits to be directly distributed to a former spouse, the marriage must have lasted at least ten years and the service member must have provided military service during those ten years. *Id.* at ¶ 5-8.

{¶ 25} Approximately two years after the divorce decree was finalized, the wife filed a motion for relief from judgment pursuant to Civ.R. 60(B)(4) and (5), requesting that the court modify the divorce decree to reflect the percentage of the husband's pension to which she was entitled and "the parties' actual date of marriage and date of divorce, rather than the agreed upon dates which do not meet the 10/10 rule." *Id.* at ¶ 9. The trial court granted the wife's motion for Civ.R. 60(B) relief and made two modifications to the divorce decree. The trial court stated that the marriage term was ten years and that the wife was entitled to receive 15 percent of the husband's retirement benefits each month. *Id.* at ¶ 12. The husband appealed, and the court of appeals affirmed. *Id.* at ¶ 12-13.

{¶ 26} The Ohio Supreme Court reversed the trial court's judgment, concluding that "the trial court lacked jurisdiction to modify the length of the

marriage stated in the divorce decree." *Id.* at ¶ 16. The court held that by changing the length of the marriage, the trial court had modified the divorce decree with respect to a distribution of property. Because both parties did not consent to that modification, the trial court had no authority to order the change pursuant to R.C. 3105.171(I). The court that stated Civ.R. 60(B) could not "provide a workaround" to "alter the statutory requirements for modification of a decree." *Id.* at ¶ 20, 23. The court explained:

> In addition to the Civ.R. 60(B) requirements for modification, the divorce and dissolution statutes contain certain statutory restrictions that limit the authority of a trial court to modify a final decree. *See, e.g.,* R.C. 3105.171(I); R.C. 3105.18(E); R.C. 3105.63(A) and (C). Retirement benefits earned during the course of a marriage constitute marital property. * * * With respect to a modification of a property division, R.C. 3105.171(I) provides: "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court *except upon the express written consent or agreement to the modification by both spouses.*" (Emphasis added.) * * *

> We have examined the interplay between Civ.R. 60(B) and the statutory provisions that relate to modification in a number of cases, most recently in *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664. * * *

> Though *Morris* dealt with spousal support, rather than a property distribution, the same principle applies: Civ.R. 60(B) cannot be used to alter the statutory requirements for the modification of a decree. Because R.C. 3105.171(I) does not permit modification absent the consent of both parties, Civ.R. 60(B) cannot provide a workaround. * * * [W]e think it evident that the trial court's order was a modification to the division of property and thus was required to comply with R.C. 3105.171(I).

*Walsh* at ¶ 19, 21, 23, 26;[2] *see also Williams v. Williams*, 1st Dist. Hamilton No. C-210331, 2022-Ohio-599, ¶ 12-18 (where husband did not consent to wife's requested changes to divorce decree, trial court had no authority, pursuant to R.C. 3105.171(I), to modify the divorce decree; wife could not use Civ.R. 60(B) to "circumvent" R.C. 3105.171(I)); *Ruple v. Ruple*, 11th Dist. Lake No. 2021-L-027, 2021-Ohio-2884, ¶ 12 (because the parties did not authorize trial court to modify separation agreement incorporated into dissolution decree, modification was precluded by statute, and

---

[2] The *Morris* Court further held that, "in accordance with our precedents," "if the parties' separation agreement, incorporated into a decree of dissolution, reserves the jurisdiction of the court to modify, a party is limited to seeking relief from judgment under Civ.R. 60(B)(1), (2), or (3); a litigant may not seek relief from the decree under Civ.R. 60(B)(4) or (5)." *Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, at ¶ 63, citing *Knapp*, 24 Ohio St.3d 141, 493 N.E.2d 1353, at paragraph two of the syllabus, and *In re Whitman*, 81 Ohio St.3d 239, 245, 690 N.E.2d 535 (1998). Similarly in *Walsh*, the court held:

> Our caselaw makes clear that even when a decree reserves jurisdiction for the court to modify the parties' agreement, a court may not grant relief under Civ.R. 60(B)(4) or (5); rather it is limited to granting relief under Civ.R. 60(B)(1), (2), and (3) — all of which require the motion to be filed within one year from the date of the judgment. * * * We have explained that a contrary rule would "relieve a litigant from the consequences of his voluntary, deliberate choice" to enter into an agreement. *Knapp v. Knapp*, 24 Ohio St.3d 141, 493 N.E.2d 1353 (1986), paragraph two of the syllabus; *see Morris* at ¶ 38-41. Further, allowing such motions would be "antithetical to our principle of the finality of judgments," *Id.* at ¶ 59 and encourage mischief by allowing those with the resources to do so "to bury their ex-spouses in a mountain of filings," *Id.* at ¶ 60. Thus, even if we were to conclude that R.C. 3105.171(I) did not apply, the trial court still lacked authority to modify the divorce decree.

*Walsh* at ¶ 28. However, the *Walsh* Court noted that after *Whitman* was decided, R.C. 3107.171(I) was amended to require "express written consent or agreement *to the modification* by both spouses." (Emphasis added.) Because the issue was not before the court, it "express[ed] no opinion * * * as to whether a reservation of jurisdiction would be a sufficient basis to allow a court to modify a property division via Civ.R. 60(B)(1), (2), or (3) under the current statutory scheme." *Walsh* at ¶ 28, fn. 3.

Civ.R. 60(B) could not "be used as 'a workaround'"). *But see Quesinberry v. Quesinberry*, 2d Dist. Montgomery No. 29192, 2022-Ohio-635, ¶ 17-47 (distinguishing *Walsh* on the ground that it "did not involve an attempt to use Civ.R. 60(B) to vacate an entire divorce or dissolution decree" and holding that the entire dissolution decree was "subject to being vacated" under Civ.R. 60(B)(1) where the parties' mutual mistake regarding wife's entitlement to spousal and child support "means that there was no meeting of the minds and no valid contract on which to base the dissolution decree"); *Ouellette*, 2020-Ohio-705, 152 N.E.3d 528, at ¶ 8, 32-33, 44 (finding "no prohibition" within R.C. 3105.171(I) "to a court's vacation of the entire property order or the decree, as appropriate under Civ.R. 60(B)(1), (2), or (3)," and holding that where a party "demonstrates facts that challenge the very formation of a consent decree, a motion for relief under Civ.R. 60(B)(1) is appropriate" and trial court had jurisdiction to consider Civ.R. 60(B)(1) motion requesting that the trial court vacate, rather than modify, property order or decree, "even if the remedy of modification was improperly ordered").

{¶ 27} Mezenski argued below that because Karen was incompetent at the time of the divorce decree and because "it is no longer equitable to enforce the judgment entry of divorce," the judgment entry of divorce "must be vacated so this matter may be heard and decided upon its merits." Mezenski did not contend that divorce was not warranted based on the parties' incompatibility, as found by the trial court. He challenged only the trial court's division of property and spousal support

award and sought to have the divorce decree vacated so that a more equitable property division and spousal support award could be entered.

{¶ 28} Mezenski argues that *Morris* and *Walsh* do not apply here because in those cases, "the parties had entered into an agreement" and "there were no allegations that one party, who was unrepresented, was incompetent at the time the divorce was granted." However, nothing in either of those cases appears to limit their holdings that Civ.R. 60(B) cannot be used to circumvent the statutory requirements of R.C. 3105.18(E) and 3105.171(I) to instances in which the divorce decree or dissolution decree incorporated an agreement of the parties. In each of those cases, the court held that a trial court had no "authority" or "jurisdiction" to modify a spousal support award or property division in a divorce decree or dissolution decree without compliance with the applicable statute, R.C. 3105.18(E) or 3105.171(I), i.e., absent a reservation of jurisdiction in the decree or the express written consent or agreement to the modification by both spouses.

{¶ 29} In this case, as in *Morris* and *Walsh*, there was no reservation of jurisdiction in the divorce decree and no express written consent or agreement to the modification by both spouses. Indeed, the divorce decree not only does not contain a reservation of jurisdiction but expressly states, with respect to the spousal support award, that "[t]he [c]ourt shall not retain jurisdiction to modify this order." Further, even if *Morris* and *Walsh* were distinguishable from this case based on the nature of the relief requested — i.e., requesting that the divorce decree be vacated in

its entirety — or the circumstances giving rise to the claim for relief — i.e., Karen's alleged incompetency — we would still find no reversible error here.

{¶ 30} This is not a case in which the trial court could grant the relief sought by Mezenski, i.e., rehearing the case on the merits and ordering a more "equitable" property division and spousal support award, by granting his Civ.R. 60(B) motion. Even if *Morris* and *Walsh* did not preclude the trial court from vacating the divorce decree in its entirety based on Karen's alleged incompetency, this is not a case that could then be "decided on its merits," i.e., the trial court could not have considered new evidence and entered a new divorce decree (setting forth a different property division and spousal support award), if the trial court were to have vacated the August 24, 2018 divorce decree under Civ.R. 60(B), because Daniel is now deceased.

{¶ 31} Daniel died on May 28, 2020, nearly a year before Mezenski filed his Civ.R. 60(B) motion. "It is axiomatic that an action for divorce abates and cannot be revived when one of the parties thereto dies." *Diemer v. Diemer*, 99 Ohio App.3d 54, 59, 649 N.E.2d 1285 (8th Dist.1994); *see also Durgin v. Durgin*, 8th Dist. Cuyahoga No. 98888, 2013-Ohio-1897, ¶ 13 ("'[T]he death of a party prior to adjudication of the issues in a pending divorce case causes the action to abate and ends any jurisdiction that a judge has over the case except to dismiss it.'"), quoting *Concepcion v. Concepcion*, 131 Ohio App.3d 271, 275-276, 722 N.E.2d 176 (3d Dist.1999), citing *Coffman v. Finney*, 65 Ohio St. 61, 61 N.E. 155 (1901); *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 99-102, 671 N.E.2d 236 (1996) (granting wife a writ of prohibition to prevent domestic relations judge from continuing with

further proceedings in divorce case after husband's death on the basis that husband's death ended any jurisdiction that the court had over the divorce case except to dismiss it); *Porter v. Lerch*, 129 Ohio St. 47, 56, 193 N.E.766 (1934) ("[W]here one or both parties to a divorce action die before a final decree of divorce, the action abates and there can be no revival. Circumstances have accomplished the object sought.").

{¶ 32} While the trial court retained jurisdiction, following Daniel's death, to "enforce" the rights and obligations "already fixed" by the divorce decree, it lacked jurisdiction to order or impose new rights or obligations. *See, e.g., Durgin* at ¶ 16-17 ("while an action termed 'personal,' such as for divorce or for determination and order of an alimony award, abated upon the death of one party to the action, an action that sought to enforce fixed rights and liabilities, such as an action to enforce alimony already awarded, survives the death of that party") (emphasis deleted), citing *Coffman*, 65 Ohio St. 61, 61 N.E. 155; *see also Diemer* at 59-63 (where divorce action abated upon plaintiff's death before the domestic relations court determined any issues, probate court, rather than domestic relations court, possessed jurisdiction to determine rights and liabilities of parties with respect to antenuptial agreement).

{¶ 33} Because Daniel had died, if the August 24, 2018 divorce decree were to be vacated, the trial court could no longer exercise jurisdiction over the divorce action and grant the relief — a new property division and spousal support award — sought by Mezenski. Accordingly, we cannot say that the trial court abused its

discretion in denying Mezenski's Civ.R. 60(B) motion on the ground that it was "without jurisdiction to grant the relief sought."

{¶ 34} Furthermore, even if the trial court could otherwise grant Mezenski the relief he requested, we would still find that the trial court did not abuse its discretion in denying Mezenski's motion for relief from judgment because he did not present sufficient allegations of operative facts in his motion and supporting materials establishing grounds for relief under Civ.R. 60(B)(5) or his entitlement to an evidentiary hearing on the motion.

{¶ 35} Civ.R. 60(B)(5) is a "catchall provision" that reflects the "inherent power of a court to relieve a person from the unjust operation of a judgment." *Caruso-Ciresi, Inc. v. Lohman,* 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983), paragraph one of the syllabus. It cannot be used as a substitute for any of the more specific provisions of Civ.R. 60(B). *See, e.g., id.; State Farm Mut. Auto. Ins. Co. v. Williams,* 8th Dist. Cuyahoga No. 107951, 2019-Ohio-4059, ¶ 43. The grounds for relief under Civ.R. 60(B)(5) "must be substantial." *Caruso-Ciresi* at paragraph two of the syllabus. Civ.R. 60(B)(5) is to be used "only in extraordinary and unusual cases when the interests of justice warrant it." *Render v. Belle*, 8th Dist. Cuyahoga No. 93181, 2010-Ohio-2344, ¶ 13-14. A motion for relief from judgment under Civ.R. 60(B)(5) must contain operative facts that would warrant relief from judgment under Civ.R. 60(B)(5). *Caruso-Ciresi* at 66; *Render* at ¶ 12. "Broad, conclusory statements do not satisfy the requirement that a Civ.R. 60(B) motion must be supported by operative facts that would warrant relief from judgment." *Natl.*

*Collegiate Student Loan Trust 2007-2 v. Tigner,* 2d Dist. Montgomery Nos. 27841 and 28035, 2018-Ohio-4442, ¶ 22.

{¶ 36} A party moving for relief from judgment under Civ.R. 60(B) is not automatically entitled to an evidentiary hearing. *PNC Bank, N.A. v. DePalma*, 8th Dist. Cuyahoga No. 97566, 2012-Ohio-2774, ¶ 12. The moving party bears the burden of proving entitlement to a hearing on the motion. *See, e.g., Esplandiu v. Esplandiu*, 8th Dist. Cuyahoga No. 104750, 2017-Ohio-5744, ¶ 13; *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 103-105, 316 N.E.2d 469 (8th Dist.1974). "'"If the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civil Rule 60(B), the trial court should grant a hearing to take evidence and verify these facts before it rules on the motion."'" *Kostoglou*, 2019-Ohio-5116, at ¶ 37, quoting *Coulson v. Coulson*, 5 Ohio St.3d 12, 16, 448 N.E.2d 809 (1983), quoting *Adomeit* at 105.

{¶ 37} "[T]he party's factual materials must, on the face, demonstrate timeliness, a reason why the motion should be granted, and a meritorious defense." *Esplandiu* at ¶ 13, citing *Danforth v. Danforth*, 8th Dist. Cuyahoga No. 86693, 2006-Ohio-2890, ¶ 14. "If the party fails to demonstrate any one of those elements the trial court need not hold an evidentiary hearing." *Esplandiu* at ¶ 13, citing *Adomeit* at 105 ("If the material submitted by the movant in support of its motion contains no operative facts or meager and limited facts and conclusions of law, it will not be an abuse of discretion for the trial court to refuse to grant a hearing and overrule the motion."); *see also Kostoglou* at ¶ 37-38 (where appellants failed to

attach an affidavit "attesting to the blanket assertions in their motion for relief from judgment," trial court did not abuse its discretion in denying appellants' motion for relief from judgment without a hearing). A trial court abuses its discretion in denying a hearing "where grounds for relief from judgment are sufficiently alleged and are supported with evidence which would warrant relief from judgment." *Kay v. Marc Glassman*, 76 Ohio St.3d 18, 19, 665 N.E.2d 1102 (1996), citing *Adomeit* at 103, 105.

{¶ 38} Mezenski contends that he presented "a colorable claim" and "arguable grounds for relief," entitling him to a hearing on his Civ.R. 60(B) motion, based on: (1) his assertions in his motion that Karen and Daniel had been married for 25 years, that Karen "had been in an assisted living facility for one and a half (1 1/2) years at the time the divorce was granted" and did not file an answer to the divorce complaint or appear for the hearing; (2) the two statements of expert evaluation he submitted in support of his motion, which he contends shows that Karen "had severe dementia" and "was not capable of managing her daily affairs"; (3) the magistrate's decision and related court order in the probate court action establishing a guardianship for Karen in October 2020 and (4) his assertions in his motion regarding why it took more than two-and-one-half years to file a motion to vacate the divorce decree. We disagree.

{¶ 39} First, Mezenski's argument essentially seems to be that Daniel committed a fraud by seeking a divorce from Karen, knowing that she was incompetent, without advising the court that she was incompetent, and thereby

obtained a disproportionate share of the marital estate and avoided paying an appropriate amount of spousal support. *See* appellant's brief at 11 ("It is clear that [a]ppellee committed a fraud upon the [c]ourt by not disclosing [a]ppellant was incompetent."). Motions for relief from judgment based on fraud of an adverse party, however, must be filed within one year of the judgment. Civ.R. 60(B); *GTE Automatic*, 47 Ohio St.2d 146, 351 N.E.2d 113, at paragraph two of the syllabus.

{¶ 40} Second, as detailed above, Mezenski submitted four exhibits in support of his motion. He submitted no affidavits in support of his motion. The only document Mezenski submitted that even arguably relates to Karen's alleged incompetency at the time of the divorce proceedings is part of exhibit No. 4 — a copy of a statement of expert evaluation on Probate Court Form 17.1, signed by an unidentified "evaluator" on September 3, 2020, purportedly relating to an evaluation of Karen on December 7, 2017. The form states, "The Statement of Evaluation does not declare the individual competent or incompetent, but is evidence to be considered by the [c]ourt." There is no time stamp or other indication that the document was filed with or otherwise submitted to the probate court.

{¶ 41} As completed, the document indicates that Karen is "mentally impaired," has "severe" "[m]ental [r]etardation/[d]evelopmental [d]isabilities" and had been diagnosed with Parkinson's disease with dementia. The statement further indicates that Karen takes various medications and is wheelchair bound, that Karen has "episodes of alertness, some excessive daytime sleepiness, some hallucinations" and that Karen was not believed to be capable of caring for her "activities of daily

living," making decisions regarding "medical treatments, living arrangements and diet" or managing her finances and property. No "indications of abuse, neglect or exploitation" were noted. Although the statement, as completed, indicates that the evaluation was performed at the Cleveland Clinic on December 7, 2017, the line on which the "[n]ame & [t]itle/[p]rofession" of the individual completing the form was to be identified is blank, and the handwriting of the individual who completed the responses to the questions on the form clearly does not match that of the unidentified evaluator who signed the form nearly three years later on September 3, 2020.

{¶ 42} Further, as noted above, although Mezenski contends that Karen was not competent at the time of the divorce proceedings, he does not dispute that the trial court properly granted the parties a divorce on grounds of incompatibility. Mezenski sought to have the divorce decree vacated because he believes the property division and spousal support award were inequitable. However, Mezenski's motion and supporting materials do not contain any operative facts demonstrating that the property division or $144,000 in spousal support awarded was inequitable.

{¶ 43} As discussed above, the trial court's August 24, 2018 divorce decree divided the parties' "separate property, marital property and debts acquired during the marriage." The transcript from the hearing was not included in the record on appeal. Accordingly, it is unknown what evidence was presented at the divorce hearing regarding the property division and award of spousal support. Simply because the property division was not equal does not mean it was not equitable. As

noted above, the trial court expressly stated in the divorce decree that the division of property, "though not equal, is equitable" because the marriage was "a second marriage for both" parties and "a significant portion" of Daniel's IRA was "premarital." Other than the portion of Daniel's IRA, which the trial court specifically referenced as being "premarital" property, it is unknown to what extent any of the assets divided by the trial court were determined to be separate property rather than marital property.

{¶ 44} Mezenski has not shown that the trial court abused its discretion in denying his motion for relief from judgment pursuant to Civ.R. 60(B)(5) without a hearing. Accordingly, we overrule his first and third assignments of error.

{¶ 45} Finally, Mezenski claims that the trial court abused its discretion in failing to appoint a guardian ad litem to protect Karen's interests in the divorce proceedings due to her incompetency, pursuant to Civ.R. 17(B). That rule provides, in relevant part:

> When a[n] * * * incompetent person is not otherwise represented in an action the court shall appoint a guardian ad litem or shall make such other order as it deems proper for the protection of such minor or incompetent person.

{¶ 46} Civ.R. 17(B) authorizes a court to appoint a guardian ad litem for the protection of an individual who is incompetent.[3] "'The trial court's obligation to

---

[3] R.C. 2111.01(D) defines an "incompetent" person as one who is "so mentally impaired, as a result of a mental or physical illness or disability, as a result of intellectual disability, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property or fails to provide for the person's family or other persons for whom the person is charged by law to provide" or one who is "confined to a correctional institution within this state."

appoint a guardian or other representative, or make some other proper order, arises when the court determines that a minor or incompetent person is not otherwise represented.'" *Gallion v. Gallion*, 10th Dist. Franklin No. 17AP-556, 2018-Ohio-3060, ¶ 20, quoting *State v. Kendrick*, 10th Dist. Franklin No. 98AP-1305, 1999 Ohio App. LEXIS 4622 (Sept. 30, 1999), citing *In re Guardianship of Carter*, 10th Dist. Franklin No. 90AP-755, 1991 Ohio App. LEXIS 586 (Feb. 8, 1991). *But see Thomasson v. Thomasson*, 153 Ohio St.3d 398, 403, 2018-Ohio-2417, 106 N.E.3d 1239, ¶ 21, 36 (trial court's order treating appellant as though she had been adjudicated incompetent and appointing a guardian ad litem to represent her interests in divorce case that "was not preceded by an adjudication of incompetency, prior notice, and any opportunity to be heard on the issue" violated appellant's right to due process; "Civ.R. 17(B) permits the trial court to appoint a GAL to represent an adult only when the court has adjudicated the adult to be incompetent.").

{¶ 47} In this case, there is nothing to indicate that Karen had been adjudicated incompetent at the time of the divorce proceedings. Even assuming Karen was incompetent at that time and, even assuming, as Mezenski argues, that the trial court had "an affirmative duty to investigate any reasonable indication that a pro se party to a lawsuit may be mentally incompetent," the trial court would have had no way of knowing that Karen could be incompetent. Karen did not appear during the divorce proceedings, and no one advised the trial court that there could be an issue with her competency. Simply because Karen, who was then 67, was living at Brookdale Westlake Village, a senior living community, at the time of the divorce

proceedings would not reasonably lead the trial court to believe she was incompetent. Accordingly, the trial court did not abuse its discretion or otherwise err in failing to appoint a guardian ad litem to protect Karen's interests during the divorce proceedings. Mezenski's second assignment of error is overruled.

{¶ 48} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR